# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE K. VILLAREAL,<br><br>  Plaintiff,<br><br>  v.<br><br>COUNTY OF FRESNO,<br><br>  Defendant. | Case No. 1:15-cv-01410-EPG (PC)<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT<br><br>(ECF NO. 12)<br><br>ORDER DENYING MOTION TO STRIKE<br><br>(ECF NO. 31)<br><br>ORDER SETTING ALBINO EVIDENTIARY HEARING FOR SEPTEMBER 12, 2017, AT 10:00 A.M. |

Defendant County of Fresno has moved for summary judgment arguing that it is undisputed that Plaintiff failed to exhaust all available administrative remedies. (ECF No. 12). After reviewing the evidence, the Court finds that there is a dispute of fact that requires an Albino evidentiary hearing. See Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). For the reasons discussed below and on the record during the hearing on June 26, 2017, (ECF No. 35), the Court sets an evidentiary hearing for September 12, 2017, at 10:00 a.m., to hear all evidence related to the issue of whether Plaintiff's complaint should be dismissed for failure to exhaust all available administrative remedies prior to filing her lawsuit.[1]

## I. BACKGROUND

Elaine K. Villareal ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma*

---

[1] The parties have consented to magistrate judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (ECF Nos. 5 & 27). Therefore, the undersigned shall conduct all proceedings in this action. Local Rule Appendix A(k)(3).

1

1  *pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  On September 17, 2015, Plaintiff filed the complaint commencing this action.  (ECF No. 1).  The complaint alleges that Plaintiff has been sentenced to 10 years for an unspecified non-violent offense.  Rather than serving her time in prison, she is confined to the Fresno County Jail.  She alleges that the jail has dangerous and inhumane living conditions, especially for long-term prisoners like herself.  She has no kind of programming.  She has no contact visits for holding her children.  She has not been offered any kind of transition to everyday living for when she is released.  The County Jail was supposed to be used for temporary confinement for defendants waiting for trial or sentencing.  Instead, it has become a long term facility.

Plaintiff states that the walls are falling apart, and some of the pieces of metal are big enough to be used as weapons.  There is black mold around the toilets and in the showers.  The pieces of cement that come off when Plaintiff sweeps her base boards are full of mildew, mold, and fungus that looks like it could be asbestos.  Inmates like Plaintiff who have severe health problems like asthma, allergies, and pulmonary problems, have difficulty breathing.  There are also mites from the walls that feed on the prisoners.

Regarding the issue of exhaustion of administrative remedies, Plaintiff indicated in her complaint that she had filed an appeal or grievance concerning all of the facts contained in the complaint, but the process was not complete because "I still have not heard anything back.  I have exhausted all avenues.  I have 3 grievences [sic] with no response yet."  (ECF No. 1, at p.2).

In an order dated November 8, 2016, this Court allowed Plaintiff's action to proceed against the County of Fresno on a claim for violation of the Eighth Amendment based on unconstitutional conditions of confinement.  (ECF No. 7) ("This Court finds that Plaintiff states a cognizable claim for violation of the Eighth Amendment based on unconstitutional conditions of confinement in the Fresno County Jail. . . . Plaintiff's allegations of poor building conditions, lack of programming or contact visits, insect infestations and other alleged inhumane conditions raise a cognizable claim that should proceed past the screening phase of the case.").

On January 31, 2017, Defendant filed a motion to dismiss on the ground that Plaintiff

failed to properly exhaust her administrative remedies. (ECF No. 12). Plaintiff filed an opposition (ECF No. 19) and Defendant filed a reply (ECF No. 20). The Court heard oral arguments on April 7, 2017, and took the matter under submission. (ECF No. 25).

Because failure to exhaust was not clear on the face of the complaint,[2] on April 11, 2017, the Court converted the motion to dismiss into a motion for summary judgment and gave both parties the opportunity to file additional evidence, as well as a reply and objections to the opposing parties' evidence. (ECF No. 26). On May 16, 2017, Defendant filed a reply and objections to Plaintiff's additional evidence. (ECF No. 28).[3] On June 7, 2017, Plaintiff filed supplemental additional evidence ("Supplemental Additional Evidence"). (ECF No. 30). On June 9, 2017, Defendant objected to Plaintiff's Supplemental Additional Evidence and requested that it be stricken. (ECF No. 31).

## II. LEGAL STANDARDS

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001); Ross v. Blake, 136 S.Ct. 1850, 1857, 1859 (June 6, 2016). The exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

---

[2] Plaintiff did state that she did not complete the grievance process, but she also stated that there was no administrative remedy process available her at her institution. (ECF No. 1, at p. 2).
[3] Plaintiff served a copy of her additional evidence on Defendant, but did not file a copy with the Court. On June 13, 2017, Defendant filed a copy of Plaintiff's additional evidence. (ECF No. 33).

3

As the U.S. Supreme Court recently explained in Ross, 136 S.Ct. at 1856, regarding the PLRA's exhaustion requirement:

> [T]hat language is "mandatory": An inmate "shall" bring "no action" (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies. . . . [T]hat edict contains one significant qualifier: the remedies must indeed be "available" to the prisoner. But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any "special circumstances."

Id. (internal citations omitted). Also as discussed in Ross, there are no "special circumstances" exceptions to this requirement. Id. at 1862. The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." Id. at 1856. The Ross Court described this qualification as follows:

> [A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. See 532 U.S., at 736, 738, 121 S.Ct. 1819. Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then "capable of use" for the pertinent purpose. In *Booth*'s words: "[S]ome redress for a wrong is presupposed by the statute's requirement" of an "available" remedy; "where the relevant administrative procedure lacks authority to provide any relief," the inmate has "nothing to exhaust." *Id.,* at 736, and n. 4, 121 S.Ct. 1819. So too if administrative officials have apparent authority, but decline ever to exercise it. Once again: "[T]he modifier 'available' requires the possibility of some relief." *Id.,* at 738, 121 S.Ct. 1819. When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy.
>
> Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it. As the Solicitor General put the point: When rules are "so confusing that ... no reasonable prisoner can use them," then "they're no longer available." Tr. of Oral Arg. 23. That is a significantly higher bar than CRIPA established or the Fourth Circuit suggested: The procedures need not be sufficiently

4

> "plain" as to preclude any reasonable mistake or debate with respect to their meaning. See § 7(a), 94 Stat. 352; 787 F.3d, at 698–699; *supra,* at 1855, 1857 – 1859. When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion. But when a remedy is, in Judge Carnes's phrasing, essentially "unknowable"—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable. See *Goebert v. Lee County,* 510 F.3d 1312, 1323 (C.A.11 2007); *Turner v. Burnside,* 541 F.3d 1077, 1084 (C.A.11 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available"). Accordingly, exhaustion is not required.
>
> And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation. In *Woodford,* we recognized that officials might devise procedural systems (including the blind alleys and quagmires just discussed) in order to "trip[ ] up all but the most skillful prisoners." 548 U.S., at 102, 126 S.Ct. 2378. And appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures. As all those courts have recognized, such interference with an inmate's pursuit of relief renders the administrative process unavailable. And then, once again, § 1997e(a) poses no bar.

Id. at 1859–60.

The failure to exhaust in compliance with section 1997e(a) of the PLRA is an affirmative defense that defendants have the burden of raising and proving. Jones, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).

The Ninth Circuit recently provided guidance regarding the proper procedural device for raising the affirmative defense of exhaustion under section 1997e(a). Albino v. Baca ("Albino II"), 747 F.3d 1162, 1168–69 (9th Cir. 2014) (*en banc*). Following the decision in Albino II, defendants may raise exhaustion deficiencies as an affirmative defense under section 1997e(a) in either a motion to dismiss pursuant to Rule 12(b)(6) or a motion for summary judgment under Rule 56. Id. If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice of the portions of the complaint barred by section 1997e(a). Jones, 549 U.S. at 223–24; Lira v. Herrera, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

5

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino II, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted"). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The Court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In a summary judgment motion for failure to exhaust, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino II, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. However, "the ultimate burden of proof remains with the defendant." Id. "If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id. at 1166.

If "summary judgment is not appropriate," as to the issue of exhaustion "the district judge may decide disputed questions of fact in a preliminary proceeding." Albino II, at 1168.

When feasible, such questions of fact should be decided before addressing the merits of the claim. Id. at 1170. "If the district judge holds that the prisoner has exhausted available administrative remedies, [or] that administrative remedies are not available…, the case may proceed to the merits." Id. at 1171.

Furthermore, while parties may be expected to simply reiterate their positions as stated in their briefs, one of the purposes of an evidentiary hearing is to "enable [ ] the finder of fact to see the witness's physical reactions to questions, to assess the witness's demeanor, and to hear the tone of the witness's voice….'" United States v. Mejia, 69 F.3d 309, 315 (9th Cir. 1995). All of this assists the finder of fact in evaluating the witness' credibility. Id. It is only in "rare instances" that "credibility may be determined without an evidentiary hearing…." Earp v. Ornoski, 431 F.3d 1158, 1169–70 (9th Cir. 2005).

## III. **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant's motion (which began as a motion to dismiss and was later converted by the Court to a motion for summary judgment) argues that Plaintiff conceded in her complaint that "she began—but did not complete—the grievance process, at least as to some of the claims she alleges." (ECF No. 12, at p. 2). Defendant also presents evidence regarding four grievances filed by Plaintiff before Plaintiff filed this lawsuit, but Defendant contends that Plaintiff did not wait for a response from Defendant, or appropriately appeal the decisions given in those responses. Additionally, Defendant contends that the grievances did not cover all of the issues presented in Plaintiff's complaint.

Specifically, Defendant provides the following detailed summary of its position:

Plaintiff alleges the following defects in the conditions of her confinement at the Fresno County Jail: (a) "very small confined living area (see CDI no. 1, p.3, Claim no. 1 sec. IV);" (b) "no access to prison privileges (CDI 1, p.4. Claim no. 1 sec. IV); (c) "no kind of programming (CDI no. 1, p.4. Claim no. 1 sec. IV)"; (d) "no kind of contact visits to hold our children (CDI no. 1, p.4. Claim no. 1 sec. IV)"; (e) "no kind of transition to everyday living (CDI no. 1, p.4. Claim no. 1 sec. IV);" (f) "the walls are falling apart (CDI no. 1, p.5. Claim no. 2 sec. IV);" (g) pieces of metal are big enough to be used as weapons (CDI no. 1, p.5, Claim no. 2 sec. IV);" (h) "black mold around the toilets and in the showers (CDI no. 1, p.5. Claim no. 2 sec. IV);" (i) "pieces of cement come off when we sweep our base boards (CDI no. 1, p.5, Claim no. 2 sec. IV);" Q) "pieces of cement are full

7

> of mildew, mold, and fungus that it looks like it could be asbestos (CDI no. 1, p.5. Claim no. 2 sec. IV);" (k) "difficulty breathing (CDI no. 1, p.5. Claim no. 2 sec. IV);" and (I) mites from the walls that feed on the prisoners (CDI no. 1, p.4. Claim no. 1 sec. IV)."
>
> During the 38 day period she was incarcerated at the Jail (beginning August 10. 2015) prior to her filing suit on September 17. 2015, Plaintiff filed a total of "four" Grievances through the Jail's grievance system. One grievance, ending no. 228, had nothing to do with any of the claims identified above from Plaintiffs complaint. That grievance was not sustained and, in any event. Plaintiff did not file an appeal. (Decl of Sgt. Javier Vital, Ex. "B").
>
> As for the three others, grievances nos. ending 109,136, and 138, those grievances included only complaints about items (f) - (I), above. Plaintiff filed no grievances for complaints (a) - (e), described above. Moreover, with regard to grievances nos. ending 109,136, and 138, Plaintiff failed to proceed beyond the mere initial filing of these three grievances prior to filing her complaint. She did not wait for the Jail's response to any of these grievances. (Incidentally, she also did not exhaust the requirement to appeal any of these grievances even after a response was issued. By then, however, she had already filed her action. (Decl of Sgt. Javier Vital, Ex. "C").
>
> Plaintiff therefore failed to comply with the procedures of the Fresno County Jail available to inmates seeking further review (Appeal) of a grievance, and the deadlines pertaining thereto, <u>prior to filing her</u> lawsuit. (Decl of Sgt. Javier Vital).

(ECF No. 12, at 2-3). Among other evidence, Defendant attached three grievances, dated September 7, 2015, September 9, 2015, and September 10, 2015, respectively, discussing issues presented in the complaint, which was filed on September 17, 2015. (ECF No. 12-1, at p. 15-19) ("The [illegible] is and [sic] inadequete [sic] facility for inmates. The wall[s] are falling apart at the base boards. There is [sic] iron rods & huge pieces of cement that can be used as weapons. The cement pieces that break off are so full of black mold & fungus & has [sic] mites that eat us up. Inmates like myself are highly allergic to mold & mildew & I have asthma. These are inhuman living conditions that cause not only mental but also physical and health trauma.").

On February 23, 2017, Plaintiff filed a document entitled "Counter-affidavits and other responsive evidentiary materials for 'opposition' to defendant's motion to dismiss." (ECF No. 19). Plaintiff argues in response that she does not receive responses or receives responses

months later, that grievances are unsustained without properly testing mold, and that some grievances are not answered at all. (ECF No. 19, at 1-2) Plaintiff also states:

> Defendant states that my beginning date of incarceration was August 10, 2015. That is not true. I've been incarcerated since March 6, 2015. I had filed prior grievances and appeal forms that I had sent with prior habeaus [sic] corpus[.] But because I did not know about being pro se and in forma pauperis and what I had access to like copies, law library, I sent original copies wich [sic] left me with no documents before the date of August 25, 2015. I do have letters that I have wrote to the prison law firm, and other government entities, and thier [sic] responses hoping for something to be done. . . .
>
> I feel I have done what needed to be done to exhaust all Administrative Remedies before filing suit with no response to <u>some</u> appeals forms. . . .
>
> Also on the face of my complaint section 11 "c" what I had not heard anything back from was <u>three</u> grievances of the many I put in. . . . Also there is [sic] some officers refuse to take grievances and tell us we are inmates and have no choice but to deal with it. . . .

(ECF No. 19, at p. 2-4). Plaintiff attached many grievances to this submission, including those submitted by Defendant, as well as grievances dated after the filing of the lawsuit. Plaintiff also attached letters complaining of conditions to Jail staff.

Defendant filed a reply on March 2, 2017. (ECF No. 20). Defendant argued that Plaintiff had not submitted any admissible evidence challenging Defendant's position on non-exhaustion. (<u>Id.</u> at 4) ("Plaintiff alleges in effect that she has filed 'prior grievances,' the originals of which she no longer has, and that she has written a number of letters to 'prison law firms' and to 'other government entities' and to 'Sheriff Mims and Capt. Norton.' Again Plaintiff fails to identify any particulars or specific factual support as to any of these alleged grievances, including the time and subject matter thereof, or to establish 'how' these alleged efforts comply or if they even could comply with the Jail's specific grievance process set forth in Defendant's motion. These bald assertions are also insufficient to overcome the County's sworn evidence in support of its motion to dismiss.") (footnote omitted).

The Court held an argument to discuss this motion to dismiss on April 7, 2017. (ECF No. 21, 25). During the argument, Plaintiff again claimed to have filed grievances at an earlier time and argued that Defendant's grievance process was flawed. Because the motion appeared

to turn on evidence, and not merely the complaint itself, the Court converted the motion to a motion for summary judgment and solicited evidence. (ECF No. 26).

Plaintiff failed to file her evidence in the time provided by the Court. However, on May 16, 2017, Defendant filed what appeared to be objections to Plaintiff's evidence (ECF No. 28), revealing the Plaintiff had served evidence on Defendant without filing it with the Court. Accordingly, the Court ordered that Plaintiff file the evidence with the Court. (ECF No. 29).

On June 7, 2017, Plaintiff filed "additional evidence for the court." (ECF No. 30). It included the following purported evidence, among other documents:

- Plaintiff's own statement under penalty of perjury that she received a write-up from Mr. D. Miller on July 15, 2015 for refusing to lock down in poop water in the mold infested rooms "that I had already wrote many grievances about, and nothing was being done…." (ECF No. 30, at p. 2). Additionally, Plaintiff states, under penalty of perjury, that "staff like Mr. Lopez, Mr. Mason, Mrs. Gee, Vang and there are others who are rude and intimidate when it comes to putting in grievances, they threaten to lock us down, refuse to sign them, or tell us grieve ain't nothing going to happen, then one of us got moved because she grieved." (ECF No. 30, at p. 3). Plaintiff authenticates and attaches additional documents. Plaintiff also states that she did not keep copies of the documents she served on Defendant. (ECF No. 30, at p. 4).

- A declaration from Angie Padilla, under penalty of perjury, stating that "I was here in 2015, with Elaine Villareal and I witnessed her put numerous grievances in about the mold and mildew from when she got here which was in March 2015. I also witnessed how floor staff like Caclena, Lopez, Mason, Vang would give her a hard time when she would ask for grievances. They would deny her them, or refuse to sign them. One time Mr. Vang pulled her out the pod to threaten to lock her down for threatening to grieve him. And I have witnessed floor staff say 'Go ahead grieve me, nothing will happen." (ECF No. 30, at p. 6).

- A rules violation form dated July 15, 2015, referred to in Plaintiff's declaration. (ECF No. 30, at p. 8).

Given Plaintiff's statement that Plaintiff had not made copies of the evidence she served on Defendant, the Court requested Defendant to file such evidence with the Court. (ECF No. 32). Defendant filed that evidence on June 13, 2017. (ECF No. 33). This evidence appears to be dated May 2, 2017. It includes declarations from other inmates, including the following:

- Declaration by Kimberly Knight stating that Ms. Knight has been in the jail since September 20, 2016, and has "witnessed and been a party of the Officers denying access to grievances to grieve the conditions of this mold infested jail. I have also witnessed and been a party to being denied inmate request forms to request the grievances." (ECF No. 33, at p. 5).

- Declaration from Shannon Reis that after one altercation she asked an officer for a grievance and the officer responded "fuck you and your grievence [sic]. Guess where your grievences go? To my desk, so fuck your grievences they'll go from my desk to the trash." (ECF No. 33, at p. 6).

- Declaration from Rachael Vasquez describing attempts to file grievances, including asking Office Apodaca to take a grievance form to Officer Lopez, so that Officer Lopez could sign it, after which Officer Lopez "pulls me out and threatens me saying if I submit the grievance he was gonna start my 24 hours all over again so it didn't matter I was gonna be locked up either way." (ECF No. 33, at p. 9).

- Declaration from Criscella Garza stating that since January 18, 2017, she has "witnessed officers deny (inmates) grievances forms and deny them (inmates) signatures. Some have even said go ahead and grieve because nothing will happen." (ECF No. 33, at p. 12).

- Declaration from Colleen Bethel stating that since March 27, 2017, she has been denied grievance forms, and that she has heard "officer P. Lopez [and] SERT officer Ms. Gee tell other inmates 'Go ahead and grieve it. Nothings [sic] going to happen." (ECF No. 33, at p. 14).

- Declaration from Kristen Thompson stating that "its [sic] also impossible to get grievance's [sic] to file & when we can get one they either get lost or it takes months to get a response." (ECF No. 33, at p. 18).

- Declaration from Ashlynn Chase stating that "I fill out a grievance and never get a reply back." (ECF No. 33, at p. 19).

Defendant filed a reply and objections to Plaintiff's evidence. (ECF Nos. 28, 31). Defendant urged the Court to ignore any evidence regarding the process of administrative remedies after the complaint was filed. (ECF No. 28) ("With this last thread of hope in hand, Plaintiff filed what is essentially an incoherent, largely inadmissible and completely irrelevant attempt to stay above water."). Defendant also goes through each declaration and asks the Court to disregard them in full because they do not directly concern Plaintiff's own failure to exhaust prior to the lawsuit being filed. Defendant also submits a declaration attesting to the

many grievances Plaintiff has successfully filed, which do not include any about officers' conduct. (ECF No. 28-3). Separately, Defendant filed an objection to Plaintiff's evidence filed on June 7, 2017, because the Court never authorized Plaintiff to file it and because it was filed late. (ECF No. 31). Defendant also argues that Plaintiff has failed to present any admissible evidence refuting Defendant's motion.

**IV.     ANALYSIS REGARDING DEFENDANT'S MOTION TO DISMISS**

As the Court described in the June 15, 2017 order (ECF No. 34) and at the June 26, 2017, hearing (ECF No. 35), the Court believes that disputed facts exist precluding a ruling in favor of Defendants on summary judgment and will set an evidentiary hearing to make factual findings on the issue of exhaustion. Specifically the Court finds that there are two relevant disputed factual issues.

First, it is disputed whether Plaintiff filed grievances regarding the issues described in the complaint prior to the grievances she filed in September 2015, which was only days before Plaintiff filed this lawsuit, and if so, what issues were raised in those prior grievances. Plaintiff has submitted her own statement under penalty of perjury that she submitted "many grievances" related to the mold infested rooms "and nothing was done" before an incident that took place on July 15, 2015. (ECF No. 30, at p. 2).[4] Moreover, Plaintiff has submitted a sworn declaration from Angie Padilla stating that she witnessed Plaintiff filing numerous grievances related to the mold and mildew conditions soon after March 2015. (ECF No. 30, at p. 6). If Plaintiff filed a grievance prior to filing suit covering the issues in the complaint, and the jail failed to respond to that grievance, Plaintiff is deemed to have exhausted administrative remedies. Andres v. Marshall, 854 F.3d 1103, 1105 (9th Cir. 2017) ("When prison officials fail

---

[4] The Court denies Defendant's motion to strike this evidence (ECF No. 31). While the evidence filed on June 7, 2017 (ECF No. 30), days after ordered by the Court, Defendant had an opportunity to respond and there is no prejudice to the delay. Given the gravity of the issues in the motion, the Plaintiff's confinement and lack of resources and assistance, and the lack of evidence of bad faith disregard of the Court's orders, this Court will not exercise its discretion to strike evidence entirely and disregard in the context of a motion to dismiss. Plaintiff is warned that the Court has discretion to disregard any filings done after the Court's deadlines in the future, absent a request for extension of time. Moreover, the Court has considered Defendant's evidentiary objections and finds that they go to the weight of the evidence and do not establish a complete lack of disputed facts.

to respond to a prisoner's grievance within a reasonable time, the prisoner is deemed to have exhausted available administrative remedies within the meaning of the PLRA.").

Second, it is disputed whether the administrative grievance procedures were "available" in light of repeated accusations that jail staff threatened and intimidated inmates, and lost or otherwise failed to respond to grievances. Ross, 136 S. Ct. at 1860 (2016) (an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."). While Defendant has objected to Plaintiff's evidence on this subject, the Court finds that those objections largely go to the weight of the evidence. The large number of verified declarations attesting to interference in the grievance process, and the requirement to construe the facts in favor of the non-moving party at this stage, establish a dispute of fact despite these objections. Additionally, Plaintiff herself has filed a declaration under penalty of perjury that "staff like Mr. Lopez, Mr. Mason, Mr. Gee, Van and there are others who are rude and intimidate when it comes to putting in grievances, they threaten to lock us down, refuse to sign them, or tell us grieve ain't nothing going to happen, then one of us got moved because she grieved." (ECF No. 30, at p. 3). Construing all facts in favor of Plaintiff, as the Court must at this stage, the Court finds that a dispute of fact exists regarding the availability of the administrative remedies.

## VII. CONCLUSION

The Court finds that material disputes of fact exist regarding whether Plaintiff exhausted all available administrative remedies before filing her complaint, and thus DENIES Defendant's motion for summary judgment. (ECF No. 12).

The Court also denies Defendant's motion to strike this evidence (ECF No. 31).

\\\
\\\
\\\
\\\
\\\

In order to resolve these disputes of fact, the Court sets an <u>Albino</u> evidentiary hearing before Magistrate Judge Erica P. Grosjean on September 12, 2017, at 10:00 a.m., at the Robert E. Coyle Federal Courthouse, 2500 Tulare Street, Fresno, CA 93721, in Courtroom #10.[5]

IT IS SO ORDERED.

Dated: **June 29, 2017**  /s/ *Erica P. Grosjean*
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court will issue a procedural order separately regarding procedures for calling witnesses and related issues.